Approved: _____
          KAYLAN E. LASKY
          Assistant United States Attorney

Before:  THE HONORABLE ONA T. WANG                    20 MAG 8655
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - x
                              :    SEALED COMPLAINT
UNITED STATES OF AMERICA       :
                              :    Violations of
        - v. -                 :    18 U.S.C. §§ 2261A(2) and 2
                              :
CHRISTINE KELLY,               :
                              :    COUNTY OF OFFENSE:
              Defendant.       :    NEW YORK
                              :
- - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

        SARAH JOYCE, being duly sworn, deposes and says that
she is a Special Agent with the Federal Bureau of Investigation
(the "FBI"), and charges as follows:

**COUNT ONE**
(CYBERSTALKING)

        1.   From at least in or about January 2014, up to and
including the present, in the Southern District of New York and
elsewhere, CHRISTINE KELLY, the defendant, with intent to
injure, harass, and intimidate another person, did use the mail,
interactive computer services and electronic communication
services and electronic communication systems of interstate
commerce, and other facilities of interstate and foreign
commerce, to engage in a course of conduct that caused,
attempted to cause, and would be reasonably expected to cause
substantial emotional distress to that person, to wit, KELLY has
engaged in a years-long pattern of harassing, threatening,
and/or defamatory conduct against an individual ("Victim-1") in
New York, New York, including sending harassing, threatening,
and/or defamatory emails to Victim-1, and to Victim-1's business
contacts, family, and others regarding Victim-1; and creating a
harassing, threatening, and/or defamatory blog regarding Victim-
1.

        (Title 18, United States Code, Sections 2261A(2)(B) and 2.)

## COUNT TWO
(CYBERSTALKING)

2.    From at least in or about July 2019, up to and including the present, in the Southern District of New York and elsewhere, CHRISTINE KELLY, the defendant, with intent to injure, harass, and intimidate another person, did use the mail, interactive computer services and electronic communication services and electronic communication systems of interstate commerce, and other facilities of interstate and foreign commerce, to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to that person, to wit, KELLY has engaged in an at least year-long pattern of harassing, threatening, and/or defamatory conduct against an individual ("Victim-2") in New York, New York and elsewhere, including sending harassing, threatening, and/or defamatory emails to Victim-2, and to Victim-2's business contacts, family, and others regarding Victim-2; placing anonymous phone calls and sending anonymous texts to Victim-2; and generating a false report causing law enforcement officials to respond to Victim-2's residence.

(Title 18, United States Code, Sections 2261A(2)(B) and 2.)

## COUNT THREE
(CYBERSTALKING)

3.    From at least in or about November 2019, up to and including the present, in the Southern District of New York and elsewhere, CHRISTINE KELLY, the defendant, with intent to injure, harass, and intimidate another person, did use the mail, interactive computer services and electronic communication services and electronic communication systems of interstate commerce, and other facilities of interstate and foreign commerce, to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to that person, to wit, KELLY has engaged in a months-long pattern of harassing, threatening, and/or defamatory conduct against an individual ("Victim-3") in New York, New York, including using social media accounts to harass, threaten, and/or defame Victim-3; and sending harassing, threatening, and/or defamatory emails to Victim-3, and to Victim-3's business contacts and others regarding Victim-3.

(Title 18, United States Code, Sections 2261A(2)(B) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4.     I am a Special Agent with the FBI, and I have been personally involved in the investigation of CHRISTINE KELLY, the defendant. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement officers, witnesses, and others, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

5.     As set forth in greater detail below, CHRISTINE KELLY, the defendant, has engaged in a relentless online harassment campaign directed at three victims (collectively, the "Victims"): Victim-1, who KELLY met on an online dating site several years ago; Victim-2, who Victim-1 dated; and Victim-3, who is a business associate and/or friend of Victim-1. KELLY has cyberstalked Victim-1 since at least January 2014, Victim-2 since at least July 2019, and Victim-3 since at least November 2019.

## KELLY'S CYBERSTALKING OF VICTIM-1

6.     Based on my participation in this investigation, my review of documents and records, my interviews of Victim-1, and my communications with other law enforcement officials, I have learned, among other things, the following:

a. Victim-1 lives in New York, New York, and works in the creative arts.

b. CHRISTINE KELLY, the defendant, moved from New York, New York, to Riverwoods, Illinois, in approximately 2013, where KELLY currently resides with her parents.

c. After matching on an online dating site in or about spring 2013, KELLY and Victim-1 began communicating online and by telephone. KELLY and Victim-1 have never gone on a date. Although Victim-1 attempted to sever contact with KELLY, KELLY continued contacting Victim-1.

d. In or about summer 2014, KELLY signed up Victim-1 and Victim-1's parents, respectively, for numerous magazine subscriptions. When Victim-1 confronted KELLY about this conduct, KELLY, in substance and in part, admitted to subscribing to the magazines and then attempted to cancel the subscriptions.

7.   Based on my participation in this investigation, my review of documents and records, my interviews of Victim-1, and my communications with other law enforcement officials, I have learned, among other things, that on or about October 6, 2014, FBI agents other than myself interviewed and admonished CHRISTINE KELLY, the defendant, and advised KELLY to cease all contact with Victim-1. During the interview, KELLY admitted to subscribing to the magazines described supra, ¶ 6(d).

8.   Based on my participation in this investigation, my review of documents and records, my interviews of Victim-1, and my communications with other law enforcement officials, I have learned, among other things, that CHRISTINE KELLY, the defendant, has continued to harass, threaten, and/or defame Victim-1 following the FBI's admonishment of KELLY on or about October 6, 2014, including, among other things, the following:

a. KELLY has sent emails to Victim-1, using two email accounts that are variants of her name ("Main KELLY Email Account-1" and "Main KELLY Email Account-2," respectively, or collectively, the "Main KELLY Email Accounts").[1] For the reasons set forth infra, ¶ 19, I believe the Main KELLY Email Accounts are associated with KELLY.

b. For example, between on or about January 1, 2014 and on or about January 12, 2020, KELLY sent Victim-1 approximately 2,000 emails from the Main KELLY Email Accounts. KELLY sometimes emailed Victim-1 multiple times within a few hours or days, after periods of less frequent emailing. For example, KELLY emailed Victim-1 approximately fifty times in all of 2019, but approximately three hundred forty times in January 2020 alone. KELLY has also emailed Victim-1's family, business contacts, and others regarding Victim-1.

c. A sample of emails that KELLY sent to and/or regarding Victim-1 is provided below:

i. On or about June 24, 2017, KELLY sent an email to Victim-1, using Main KELLY Email Account-1, with the subject

---

[1] At times, KELLY has sent an email to two or more of a victim's email accounts at once. In such instances, each email is counted separately in the approximate figures listed in this Complaint.

line, in sum and substance, "That shit has been bothering me for three fucking years. Looks like nothing has changed w you. How sad. Grow or die, I'm coming for you motherfucker," and with nothing written in the email body. Within approximately the next seven minutes, KELLY sent Victim-1 approximately four additional emails, without receiving email responses from Victim-1.

       ii. On or about August 11, 2019, KELLY sent Victim-1, Victim-1's mother[2], and another individual an email, using Main KELLY Email Account-1, in which KELLY stated, in substance and in part, "You're going to learn to stop the e-games when I go to the press and name off these names."

       iii. On or about August 12, 2019, KELLY sent Victim-1 an email, copying approximately three of Victim-1's business contacts, using Main KELLY Email Account-1, in which KELLY stated, in substance and in part, "YOURE A MONSTER AND KARMA IS GOING TO SLUG YOU IN THE FACE [Victim-1]. YOU'VE FUCKED UP FOR THE LAST TIME. AND I SEE YOU AND ALL OF YOUR FRIENDS FOR THE OPPORTUNIST ABUSERS THAT YOU ARE."

       iv. On or about August 15, 2019, KELLY sent Victim-1 an email, using Main KELLY Email Account-1, with the subject line, in substance and in part, "Something is going to happen to your parents," which contained the message, in substance and in part, "Karma is real [Victim-1]."

       d. In addition to sending voluminous emails to and regarding Victim-1, KELLY created a blog (the "Blog") in or about August 2019, in which KELLY published harassing, threatening, and/or defamatory statements about Victim-1. The Blog's header features a photograph of Victim-1 with red eyes, refers to Victim-1's full name and employer, and accuses Victim-1 of, in substance and in part, "abuse." For the reasons set forth infra, ¶ 18, I believe the Blog is associated with KELLY.

       9.   Based on my conversations with Victim-1, I know that the above-described course of conduct has caused Victim-1 substantial emotional distress.

### KELLY'S CYBERSTALKING OF VICTIM-2

       10.   Based on my participation in this investigation, my review of documents and records, and my interviews of Victim-2, I have learned, among other things, the following:

---

[2] Between on or about August 12, 2019 through on or about January 6, 2020, the defendant emailed Victim-1's mother hundreds of times.

a. Victim-2 works in public relations. As part of Victim-2's job, Victim-2 is required to maintain a strong social media presence.

b. Victim-2 lived in New York, New York, until in or about March 2019, when Victim-2 relocated to California. Since relocating, Victim-2 has returned to New York, New York, on several occasions.

c. Victim-2 has never met CHRISTINE KELLY, the defendant. Victim-2 previously dated Victim-1.

11. Based on my participation in this investigation, my review of documents and records, and my interviews of Victim-2, I have learned, among other things, the following:

a. In approximately July 2019, CHRISTINE KELLY, the defendant, began an email campaign against Victim-2, emailing Victim-2 as well as Victim-2's business contacts, family, and others.

b. For example, using the Main KELLY Email Accounts, between approximately July 31, 2019 and approximately November 20, 2019, KELLY sent Victim-2 approximately 130 emails. Between approximately August 12, 2019 and approximately October 1, 2019, the defendant emailed Victim-2's business contacts approximately thirty times.

c. A sample of emails that KELLY sent to and/or regarding Victim-2 is provided below:

i. On or about July 31, 2019, while Victim-2 was visiting New York, New York, KELLY sent Victim-2 an email, copying another individual and Victim-1, from Main KELLY Email Account-1, providing a screenshot of one of Victim-2's social media accounts and stating, in sum and substance, that Victim-2 was "trolling" KELLY, which made Victim-2 "look pathetic." In a reply to KELLY's own email, KELLY stated, in sum and substance, that Victim-2 would "eat[] crow on this post to your bosses."

ii. On or about July 31, 2019, while Victim-2 was visiting New York, New York, KELLY sent Victim-2 an email, copying Victim-1, from Main KELLY Email Account-1, with the subject, in substance and in part, "Enough [Victim-2]. FINAL warning before I email your boss," which had no message in the body of the email. Less than a minute later, KELLY responded to KELLY's own email, stating, in substance and in part, "You were complicit in some repulsive actions in 2016. Don't make the same mistake again." Around an hour later, KELLY responded to KELLY's

own email again, stating, in substance and in part, "I've been very clear that I want kids and to find a life partner. I'm not putting up w a second more of your garbage [Victim-2]. This is done. . . . She's going to get herself in legal trouble again if she doesn't stop. She's not your publicist." Around ten minutes later, KELLY responded to KELLY's own email again, stating, in substance and in part, "And if I have to tell you this again, I'm taking you to court again."

       iii. On or about August 11, 2019, KELLY sent Victim-2 an email from Main KELLY Email Account-1, which included the statement, in substance and in part, "You're done. I'm naming names when I go to the press, and yours is in sharpie."

       iv. On or about October 1, 2019, KELLY sent a former employer of Victim-2 an email, bcc-ing Victim-1, from Main KELLY Email Account-1, in which KELLY wrote, in substance and in part, that Victim-2 had been "harassing [KELLY] on social media for years" and that KELLY had already "notified [Victim-2's prior former employer] years ago."

       v. On or about October 2, 2019, KELLY sent Victim-2 an email using Main KELLY Email Account-1, which stated, in substance and in part, "The ONLY reason I haven't called [an organization for which Victim-2 volunteers (the "Volunteer Organization"] is bc this world needs as many . . . volunteers as it can get. If it Weren't for that, believe me, I would have. You're a pathetic asshole."

       vi. On or about May 1, 2020, Kelly sent Victim-2's father, among others, an email using Main KELLY Email Account-1, which stated, in substance and in part, "[Victim-2] does not seem to realize the severity of her actions. It must completely stop. NOW. . . . She continually says she will never stop harassing, trolling, and defaming me."

   12. Based on my participation in this investigation, my review of documents and records, and my interviews of Victim-2, I have learned, among other things, the following:

    a. On or about March 8, 2020, over the course of a little over an hour, Victim-2 was contacted repeatedly from approximately five different phone numbers (the "-9017 Number," "-2691 Number," "-7781 Number," "-3803 Number," "-4479 Number," or, collectively, the "March 8, 2020 Numbers"), using a Voice over Internet Protocol[3] ("VoIP") provider, by call and text. For

---

[3] VoIP allows an individual conduct voice or text communications over the Internet.

the reasons set forth infra, ¶ 21, I believe each of the March 8, 2020 Numbers are associated with KELLY.

b. The -9017 Number called Victim-2 approximately three times. Additionally, in texts from the -9017 Number, the user of the -9017 Number, in substance and in part, identified herself as "Angela," said "Angela" got Victim-2's phone number from a former boyfriend of Victim-2 other than Victim-1 (the "Ex-Boyfriend"), and accused Victim-2 of posting about KELLY online.

c. Several minutes later, Victim-2 received approximately one call and several texts from a second number, the -2691 Number. The user of the -2691 Number, in substance and in part, purported to be "Angela" using a friend's phone. Victim-2 did not respond to the texts.

d. Around this time, Victim-2 also received a text from a third number, the -7781 Number, purporting to be from the Ex-Boyfriend, requesting that Victim-2 call "Angela," and Victim-2 also received approximately three calls from the -7781 Number.

e. Subsequently, Victim-2 received approximately seven total calls from two further numbers, the -3803 Number and -4479 Number.

13.   Based on my participation in this investigation, my review of documents and records, my interviews of Victim-2, and my conversations with other law enforcement officers, I have learned, among other things, the following:

a. On or about April 25, 2020, while Victim-2 was outside of her home in California, Victim-2 received approximately fifteen calls over approximately eighteen minutes as well as multiple text messages from an unknown number ending in -4878 (the "-4878 Number"), using a VoIP provider. The caller, a male, left a voicemail stating, in substance and in part, that Victim-2 should "stop harassing his friend or they would have to call the cops."  For the reasons set forth infra, ¶ 22, I believe the -4878 Number is associated with KELLY.

b. Shortly thereafter on or about April 25, 2020, when Victim-2 returned to Victim-2's home, local law enforcement officers were waiting for her. The local law enforcement officers stated that, in substance and in part, a caller who identified herself as "Sarah Jackson" had requested a welfare check for Victim-2 and had provided Victim-2's address, phone number, and physical description. I am aware that "Sarah Jackson" had contacted local law enforcement using a phone number ending in -3865 (the "-3865 Number"). For the reasons set

forth <u>infra</u>, ¶ 22, I believe the -3865 Number is associated with KELLY.

       c. On or about April 26, 2020, KELLY, using Main KELLY Email Account-1, emailed an FBI agent other than myself, stating, in substance and in part, that law enforcement officers were "sent to [Victim-2's] home in [city] today."

    14.  Based on my conversations with Victim-2, I know that the above-described course of conduct has caused Victim-2 substantial emotional distress.

<u>**KELLY'S CYBERSTALKING OF VICTIM-3**</u>

    15.  Based on my participation in this investigation, my review of documents and records, my interviews of Victim-3, and my communications with other law enforcement officials, I have learned, among other things, the following:

       a. Victim-3 works in the creative arts, and as part of Victim-3's job, maintains a strong social media presence. Victim-3 resides in New York, New York.

       b. Victim-3 has never met CHRISTINE KELLY, the defendant. Victim-3 is a friend and/or business contact of Victim-1.

       c. Starting on or about November 22, 2019, KELLY, using the Main KELLY Email Accounts, in substance and in part, repeatedly asked Victim-3 for Victim-3's lawyer's and publicist's contact information. On or about November 23, 2019, in an email sent from Main KELLY Account-2 to Victim-3, KELLY's stated reason for contacting Victim-3 was, in substance and in part, because of "[Victim-1] / trolling / shitposts / intentional infliction of emotional stress dating back to 2014."

       d. KELLY has used at least approximately eight Instagram accounts (the "Instagram Accounts") to harass, threaten, and/or defame Victim-3. For example, on or about December 20, 2019, KELLY sent a message from one of the Instagram Accounts to Victim-3, stating, in substance and in part, "I'm emailing every sponsor and partner about your trolling and shitposting until it stops." For the reasons set forth <u>infra,</u> ¶ 20, I believe the Instagram Accounts are associated with KELLY.

       e. On or about December 15, 2019 and December 16, 2019, KELLY, using Main KELLY Email Account-1, emailed certain of Victim-3's business contacts at least three times, including Victim-3's literary agent and publishing agency, and a non-profit organization with whom Victim-3 collaborates. KELLY

wrote, among other things, that Victim-3 had engaged in "non-stop bullying" and the business contacts should "consider this when thinking of working w her in the future." On or around December 16, 2019, KELLY, using Main KELLY Email Account-1, sent Victim-3 an email stating, in substance and in part, that KELLY would "keep telling every single corporation and org you work with about what you're doing until you stop doing it to me."

16.   Based on my conversations with Victim-3, I know that the above-described course of conduct has caused Victim-3 substantial emotional distress.

### KELLY Controlled the Electronic Accounts

*IP Addresses*

17.   Based on my review of records obtained from the internet service provider for several IP addresses[4], and my review of other documents and records, I am aware of the following:

a. The father of CHRISTINE KELLY, the defendant, with the address of KELLY's residence in Riverwoods, Illinois, is the listed subscriber of the below-listed IP addresses for the following time periods:

i.      Home IP Address-1, from at least approximately September 24, 2019 through at least approximately December 13, 2019;

ii.      Home IP Address-2, from at least approximately June 23, 2019 through at least approximately September 26, 2019; and

iii.      Home IP Address-3, from at least approximately June 23, 2019, through at least approximately December 13, 2019.

b. A coffee shop located in Riverwoods, Illinois, approximately a three-minute drive from KELLY's residence, is the listed subscriber of the below-listed IP addresses for the following time periods:

---

[4] Based on my training and experience, I know that "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider assigns a different unique number to a computer every time it access the Internet. IP addresses might also be static, meaning an Investigative Software assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

        i.     Coffee Shop IP Address-1, from at least approximately June 23, 2019 through at least approximately September 26, 2019; and

        ii.    Coffee Shop IP Address-2, from at least approximately June 24, 2019 through at least approximately December 13, 2019.

    c. A library located in Deerfield, Illinois, approximately an eight-minute drive from KELLY's residence, is the listed subscriber of the below-listed IP addresses for the following time periods:

        i.     Library IP Address-1, from at least approximately June 23, 2019 through at least approximately December 13, 2019; and

        ii.    Library IP Address-2, from at least approximately May 16, 2013 through at least approximately December 13, 2019.

*Blog*

18.  As set forth in greater detail, supra, ¶ 8(d), CHRISTINE KELLY, the defendant, used the Blog to harass, threaten, and/or defame Victim-1. Based on records obtained from the Blog provider, I am aware that, among other things, a specific email address is listed for the subscriber of the Blog (the "Other KELLY Email Account"), and the Blog was accessed from Coffee Shop IP Address-1, Home IP Address-3, and Library IP Address-2.

*Email Accounts*

19.  As set forth in greater detail, supra, ¶¶ 8, 11, 13(c), 15, 18, CHRISTINE KELLY, the defendant, used the Main KELLY Email Accounts to harass, threaten, and/or defame the Victims, and used the Blog (the subscriber of which lists the Other KELLY Email Account), to harass, threaten, and/or defame Victim-1 and others. Based on my review of records obtained from Google, I am aware of the following:

    a.   Main KELLY Email Account-1 and Main KELLY Email Account-2 were accessed from Coffee Shop IP Address-1, Coffee Shop IP Address-2, and Home IP Address-2, and Main KELLY Email Account-2 was also was accessed from Home IP Address-1. The Other KELLY Email Account was accessed from Home IP Address-2.

b.    The subscriber of Main KELLY Email Account-1 is "Christine Kelly," which is KELLY's legal name, and the subscriber of Main KELLY Email Account-2 is "C K," which are KELLY's initials.

c.    The Main KELLY Email Accounts and the Other KELLY Email Account are linked by cookie, meaning that the accounts have been accessed from the same device.

*Instagram Accounts*

20.  As set forth in greater detail, <u>supra</u>, ¶ 15(d), CHRISTINE KELLY, the defendant, used the Instagram Accounts to harass, threaten, and/or defame Victim-3. The Instagram Accounts were accessed from Home IP Address-1.

*VoIP*

21.  As set forth in greater detail, <u>supra</u>, ¶ 12, on or about March 8, 2020, Victim-2 received several calls and text messages from the March 8, 2020 Numbers. According to records obtained from a VoIP provider, the March 8, 2020 Numbers were accessed from Coffee Shop IP Address-1 on or about March 8, 2020.

22.  As set forth in greater detail, <u>supra</u>, ¶ 13, on or about April 25, 2020, Victim-2 received several calls and text messages from the -4878 Number; and was later visited by law enforcement officers conducting a welfare check, who had been prompted to do so by an individual purporting to be "Sarah Jackson" who was calling from the -3865 Number. According to records obtained from a VoIP provider, the -4878 Number and the -3865 Number were accessed from Coffee Shop IP Address-1 on or about April 25, 2020.

*Other*

23.  Based on my review of documents provided by Google pursuant to a search warrant, I have learned, among other things, that on or about March 5, 2020, KELLY searched the phrase "addicted to trolling."

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of CHRISTINE KELLY, the defendant, and that she be arrested, and imprisoned or bailed, as the case may be.

s/ Sarah Joyce / OTW

Sarah Joyce
Special Agent   Cred. No. 28062
Federal Bureau of Investigation

Sworn to through reliable
electronic means this
14th day of August, 2020

THE HONORABLE ONA T. WANG
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK